SEABURY (BATES v.).   See Case No. 1,104.

SEABURY (CUTTING v.).   See Case No. 3,-
521.

## Case No. 12,574.

### SEABURY et al. v. FIELD et al.

#### [1 McAll. 1.] [1]

Circuit Court, N. D. California. July Term,
1855.[2]

TREATY — TITLE TO LAND IN BAY OF SAN FRAN-
CISCO—ADMISSION OF CALIFORNIA—VOID GRANT
—EJECTMENT—PLAINTIFF'S TITLE.

1. On the ratification of the treaty of Guada-
lupe Hidalgo, property below low-water mark,
in the bay of San Francisco, passed from Mex-
ico to the United States. Intermediate the
date of the treaty and the admission of Cali-
fornia into the Union, the title remained in the
government of the United States. During that
period, no deed or transfer by any officer of this
government, unauthorized by an act of con-
gress, could alienate any portion of the public
domain. Such conveyance was a mere nullity.

2. On the admission of California into the
Union, she became subrogated to the rights
over the disputed premises which had been vest-
ed in the United States, subject only to any
cession of them by that provision of the con-
stitution which surrenders to the general gov-
ernment the power to regulate commerce with
foreign nations, and among the several states,
and with Indian tribes.

3. Although a void grant cannot be confirmed
by subsequent acts between individuals, it is
otherwise as to confirmation by statute.

4. Plaintiffs cannot recover in ejectment, un-
less on a better title than defendants.

This is an action of ejectment [by Pardon
G. Seabury and others against Edward
Field] instituted for the recovery of a lot of
land forming a portion of property known
as the "Beach and Water Lots," situate in
front of the city of San Francisco, interme-
diate low-water mark and the ship-channel
of the bay and between Rincon and Fort
Montgomery Points. The plea filed was a
general denial, equivalent to a plea of not
guilty at common law. The facts of the
case arose mainly out of the documentary
title of the respective parties.

Holliday & Saunders, for plaintiffs.

Lockwood, Tyler & Wallace, for defend-
ants.

McALLISTER, Circuit Judge (charging
jury). The plaintiffs trace their title to one
Thomas Sprague, to whom a grant to the
lot in controversy was made on January 3,
1850, by John W. Geary, alcalde of the city
of San Francisco. The power of said al-
calde is predicated upon the proclamation of
General Kearney, issued on the 10th of
March, 1847, as military commander in Cali-
fornia at the time. By that proclamation,
the power to grant was assumed by virtue
of alleged powers vested in him by the pres-

[1] [Reported by Cutler McAllister, Esq.]
[2] [Reversed in 19 How. (60 U. S.) 323.]

ident of the United States. In the exercise
of those powers, all the property known as
the "Beach and Water Lots," was granted
with certain reservations to the city of San
Francisco. The court instructs you, on this
point, that the proclamation of General
Kearney, and the grant under it, passed no
greater interest in the property than it
would have done if signed by a private, un-
official person. During the period California
was subject to the American arms, the mili-
tary and municipal officers in the service of
the United States government exercised
their functions in subordination to it. What-
ever may have been their powers during
that anomalous condition of things, the pow-
er to grant was not one of them. They
could do no act to affect the rights of the
government of the United States to the pub-
lic property; rights to be determined in their
extent and character by the issue of the
pending contest. On the ratification of the
treaty of Guadalupe Hidalgo, the rights po-
litical and proprietary over the property in
dispute, passed from the government of
Mexico, where it had been, to that of the
United States. There was no officer in the
service of the government who could for
any purpose, or at any period, make a valid
alienation to any person, natural or artificial,
of any portion of the public property in land.
The constitution of the United States con-
fides to congress the exclusive power of dis-
posing, and making all needful rules and
regulations respecting the public property of
the government. No interest, therefore, hav-
ing passed under the proclamation of Gen-
eral Kearney to the city of San Francisco, it
could transmit none to Sprague, by means of
the grant made by their alcalde, Geary. As
title, it gives no standing in this court to
the plaintiffs. How far the documents they
have produced in evidence may be available
to them, considered in another aspect of this
case, will be brought to your consideration
hereafter.

The documentary title of the defendants
next claims attention. They claim under a
grant from Alcalde Leavenworth, under date
of September 28, 1848. This title is as in-
valid as the one under which the plaintiffs
claim. No interest proprietary or political
over the property in the bay of San Francis-
co, below low-water mark, was vested in the
pueblo of San Francisco, under the Mexican
government; if it be admitted that such
pueblo ever had an organized existence. No
such interest having ever vested in the Mex-
ican ayuntamiento, none such could have
been transferred to its successor, the Amer-
ican town council. But if it be admitted
that the power did exist in the former to
grant this water property, it by no means
follows that such power, the delegation of
sovereignty from the Mexican government,
survived after the sovereignty of which it
had formed a part, had ceased to exist. No
officer, Mexican or American, could exercise

the granting power over public property of the United States. Nothing but an act of congress could authorize the exercise of such power. The court, therefore, charges you, that the two grants under which the parties in this case respectively claim, are mere nullities, neither of which conveyed a valid title to the land it assumed to transfer. Thus far, as to documentary title, the parties stand on an equal footing.

It becomes necessary now, that you fix the attitude of the parties as it is ascertained by the evidence in this case as to the possession of the premises in dispute at the time of the passing of the act of the legislature of this state, on March 26, 1851 [Comp. Laws, 764], the origin of the title of both parties, as also, at the date of the commencement of this suit. The witnesses are few in number, and the facts to which they testify are not complicated. It is your especial province to decide on them, limited in your inquiries only by the boundaries of truth. Having fixed in your minds the position of the respective parties at the date of the said act of the legislature, known as the "Beach and Water-Lot Bill," it becomes the duty of the court to instruct you as to the legal effect of that act upon the rights of the parties. They both claim under this act. What was the interest of this state in the property in dispute at the time it was passed, is the first question. Reference has been made to Case of Pollard's Lessee [3 How. (44 U. S.) 212] as settling the question of ownership by this state in the said property by her annexation to the Union. The court does not consider that case as directly deciding the point, inasmuch as the decision turned to some extent on the fiduciary character imposed on the government of the United States, under the cession made to them in 1802, by the state of Georgia. But in view of the general reasoning, in that case, of the constitution of this state, embodying her boundaries, and the terms of the act of congress admitting her into the Union, the court instructs you that this state, on her accession to this confederacy, became subrogated to all the rights, political and territorial, in this water-property, which had been theretofore in the United States government after the treaty of Guadalupe Hidalgo. Those rights were consequently in this state at the time of the passing of the act of the legislature under consideration. It is entitled, "An act to provide for the disposition of certain property of the state of California." Comp. Laws, 764. By its second section, the use and occupation of the property is granted to the city of San Francisco, for the term of ninety-nine years from its date, except all the lands being a portion of said property, which had been "sold by the authority of the ayuntamiento, town or city council, or any alcalde of the said town or city, or by any alcalde of the said town or city at public auction, in accordance with the terms of the grant known as 'Kearney's Grant to the City

of San Francisco,' and confirmed by the ayuntamiento—town or city council—thereof, and also registered and recorded in some book of record now in the office, custody, or control of the recorder of the county of San Francisco, on or before the 3d day of April, 1850." All such lands as had been sold in the manner described, were granted to the respective purchasers thereof for the term of ninety-nine years. It is contended that this act is a confirmation of the grants under which the parties claim. The court does not so consider. Those profess to convey a fee; the act of the legislature transfers a chattel-interest, a term of years only; an estate differing in quantity and degree from that in the grants. It cannot be deemed the confirmation of a pre-existing estate, but the creation of a new one. The court considers this act a legislative grant of land for a term of years, and the reference therein made to lands which had been purchased and held under the prescribed form, as a "designatio personarum," to designate the classes of persons who were to take as grantees. The inquiry is, do the parties, or either, or both of them, belong to the class of grantees designated by the statute? Both claim to be so comprehended. On this point, the court instructs you that if you are satisfied from the evidence that the plaintiffs are purchasers of the lot in controversy, comprehended within the boundaries mentioned in said act, which lot was sold at public auction by the authority of the town-council of San Francisco, in accordance with the terms of the grant known as Kearney's grant to the city of San Francisco, then, in such case, the plaintiffs are to be deemed as comprehended within one of the classes of grantees designated by the statute. And the court further instructs you, that, if you are satisfied from the evidence that the defendants hold the lot in controversy as purchasers under the grant of an alcalde of the city of San Francisco, which was confirmed by an ayuntamiento, or town or city council thereof, and also registered and recorded in some book or record in the office, custody, or control of the recorder of the county of San Francisco, on the 20th day of March, 1851, and which registry or record was made on or before the 3d day of April, 1850, then, in such case, the court instructs you that the defendants are also among those designated as the other class of grantees under said act. The mode and manner in which the confirmation of the town-council is to be given are not prescribed, and any form in which it may have been given, if it satisfies you of the fact, will be sufficient in this case. Should you be satisfied from the evidence of the authority or confirmation of the ayuntamiento, or town-council, to both the grants under which the parties respectively claim, then the court instructs you that the parties stand in equali jure, as to documentary title, and their rights must be adjusted by the parol testimony and the principles of law ap-

plicable to the facts elicited. These will be found in the instructions prayed for by the respective counsel, which the court will now give.

The plaintiffs' counsel ask me to instruct you: "(1) If the jury believe that the lot in controversy was sold to Sprague, by Alcalde Geary, at public auction, in accordance with the terms of the grant known as "Kearney's Grant" to the city of San Francisco, then the second section of the act of the California legislature, approved March 26, 1851, operates as a valid grant of the same lot, for the space of 99 years from the date thereof, to the said Sprague. (2) No title passed to Parker by the grant from Leavenworth, of September 25, 1848." The court has given you, and now reiterates, the principles embodied in the foregoing instructions.

The counsel for defendants have asked the following instructions, which I give you: "(1) Although a void grant cannot be confirmed by a subsequent act between individuals, yet it is otherwise as to confirmation by statute, and the legislature may, by statute, confirm a deed or grant which was absolutely void at the time of confirmation." The court gives this instruction with the addition,—"So that vested rights of third persons are not divested." "(2) The lot in question being covered with tide-water, vested in the state of California, upon the admission of the state into the Union. (3) The state having thus been the owner of the property in question, it was competent for the state to dispose of it by statute operating as a conveyance. (4) The act of March 20, 1851, operated as a legislative grant in the cases therein specified, and if the lot in question was sold or granted on September 25, 1848, by Leavenworth, as alcalde of San Francisco, and afterwards confirmed by the ayuntamiento, or town or city council, and registered on or before the 3d day of April, 1850, in some book of record in the office, custody, or control of the recorder of the county of San Francisco, at the date of the passage of the act, the said statute operated as a grant of the said lot to the said Parker, his heirs and assigns, and any person holding under him or them, for the term of ninety-nine years from the date of the act. (5) In case of equal rights, or equities, the maxim, 'Prior in tempore, potior in jure.' will prevail. (6) In ejectment, the plaintiff cannot recover without showing a better title than the defendants; and unless the plaintiffs have shown in themselves a better title, the verdict must be for the defendants." The plaintiffs must recover on their legal title, as distinguished from the equitable title of the defendants.

Verdict for plaintiffs.

[NOTE. At this term a motion was made for a new trial, which was overruled. Case No. 12,575. This cause was carried, on writ of error, to the supreme court, where the judgment of this court was reversed. 19 How. (60 U. S.) 323.]